THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| K.K. and I.B., <br><br> Plaintiffs, <br><br> v. <br><br> PREMERA BLUE CROSS and COLUMBIA BANKING SYSTEM, INC. BENEFITS PLAN, <br><br> Defendants. | CASE NO. C21-1611-JCC <br><br> ORDER |

This matter comes before the Court on Defendants' motions seeking partial dismissal and to seal. (Dkt. Nos. 33, 34.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion to dismiss and GRANTS the motion to seal for the reasons explained herein.

I.  BACKGROUND

Plaintiffs K.K. and I.B. are, respectively, a mother and daughter. (*See* Dkt. No. 2 at 3.) I.B. is a woman in her early twenties who has, in the past, received treatment for serious mental illness. (*See id.* at 3–4) In 2016, in response to worsening symptoms, her treatment team recommended that she be placed at a residential treatment center. (*Id.* at 4–5.) I.B. entered the Eva Carlston Academy ("ECA") shortly thereafter. (*Id.* at 2.) ECA is a licensed residential treatment facility in Salt Lake County, Utah, which treats adolescents experiencing mental

health, behavioral, and substance abuse problems. (*Id.*) ECA provided I.B. residential behavioral and mental health treatment for approximately one year. (*Id.*)

Defendant Columbia Banking System, Inc.'s Benefits Plan ("the Plan") is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.*) During all relevant times, K.K. was and continues to be a participant in the Plan and I.B. was and continues to be a Plan beneficiary. (*Id.*) Defendant Premera Blue Cross ("Premera") is the Plan's third-party claims administrator and fiduciary. (*Id.* at 1.) As a result, K.K. submitted a claim to Premera Blue Cross for coverage of I.B.'s treatment at ECA, totaling over $100,000. (*Id.* at 2, 10.)

Premera determined that I.B.'s treatment was not medically necessary and denied coverage. (*Id.* at 4.) K.K. contends that Premera used more stringent criteria to determine the medical necessity of I.B.'s mental health treatment than Premera uses for medical or surgical treatment with comparable levels of acuity. (*Id.* at 2, 4, 7–8, 10.) Specifically, K.K. alleges that, for her residential mental health treatment to be medically necessary, Premera required I.B. to be in "acute crisis." (*Id.* at 6, 7–8.) Yet, according to the Complaint, Premera *does not require* acute symptoms for analogous medical and surgical treatment options. (*Id.* at 7.)

After two rounds of internal appeals and an independent review by an external review agency affirming Premera's denial of coverage, Plaintiffs filed this action alleging that Defendants' denial of I.B.'s medical care violated ERISA and the federal Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act (the "Parity Act"), 29 U.S.C. § 1185a (including its implementing regulations). (*See generally* Dkt. No. 2.)[1]

Defendants now ask the Court to dismiss Plaintiffs' Parity Act claims. (*See* Dkt. No. 34.) Defendants provide two reasons: (1) the Complaint fails federal pleading standards; and (2) the Parity Act claims are superfluous to the ERISA claims. (*See* Dkt. Nos. 34, 40.)

---

[1] Plaintiffs initially sued in the District of Utah, which transferred this matter to this Court upon the parties' stipulated motion to change venue. (Dkt. Nos. 19, 20.)

ORDER
C21-1611-JCC
PAGE - 2

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it "fails to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain more than a "formulaic recitation of the elements of a cause of action" and must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

"On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the [plaintiff]." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Parity Act

The Parity Act forbids ERISA group health plans from imposing more restrictive treatment limitations for mental health or substance use disorder benefits than for medical or surgical benefits. *See* 29 U.S.C. § 1185a(3)(A)(ii); *Danny P. v. Cath. Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018). Such impermissibly disparate treatment limitations may be "quantitative" or "nonquantitative." 29 C.F.R. § 2590.712. Quantitative treatment limitations include treatment limitations expressed numerically, "such as 50 outpatient visits per year." 29 C.F.R. § 2590.712(a). On the other hand, nonquantitative treatment limitations "limit the scope or duration of benefits for treatment under a plan or coverage" based on factors such as "geographic location, facility type, provider specialty," and medical necessity. 29 C.F.R.

§ 2590.712(c)(4)(ii). Plans must therefore apply comparable "processes, strategies, evidentiary standards, or other factors" in "limiting or excluding benefits based on medical necessity" for both mental health/substance use disorder benefits and medical/surgical benefits. 29 C.F.R. §§ 2590.712(c)(4)(i), (ii)(A).

To state a Parity Act violation, a plaintiff must show that: (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared. *See A.H. ex rel. G.H. v. Microsoft Corp. Welfare Plan*, 2018 WL 2684387, slip op. at 6 (W.D. Wash. 2018); *see also* 29 C.F.R. § 2590.712(c)(2)(i) (Parity Act requirements).

1. <u>Plaintiffs Adequately Plead a Parity Act Violation</u>

The parties do not dispute that the Complaint adequately alleges the first two elements of a Parity Act violation. Rather, Defendants argue that Plaintiffs have not shown that Premera or the Plan "impose[] more stringent [nonquantitative treatment limitations] for establishing medical necessity for residential treatments than for the medical/surgical alleged analogues, skilled nursing facilities, inpatient rehabilitation facilities, and inpatient hospice facilities." (*See* Dkt. No. 34 at 10–11.) In support, Defendants cite several cases from the District of Utah and other courts outside the Ninth Circuit that have dismissed complaints based on similar facts, including the use of medical necessity criteria developed by third party InterQual. (*Id.* at 11, 14–15.) Defendants' cited out-of-Circuit cases are neither persuasive nor binding.

This Court permits plaintiffs to plead a facial violation or an as-applied Parity Act violation. *See A.Z. ex rel. E.Z. v. Regence Blueshield*, 333 F. Supp.3d 1069, 1081 (W.D. Wash. 2018). Plaintiffs alleging facial Parity Act violations "must properly identify the violative limitation" from the plan's terms or the administrative record. *Id.* And once they do so, they may

proceed to discovery even "without specifying the processes and factors used by a defendant to apply that exclusion—facts that would be solely within a defendant's possession at this stage in the litigation." *Id.* (quoting *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, 2018 WL 3518511, slip op. at 3 (D. Mass. 2018)). Plaintiffs alleging as-applied Parity Act violations must simply allege that the insurer applied the plan in a disparate way as to mental health or substance use disorder treatment, regardless of what the plan itself says. *Id.* at 1081–82. This approach is consistent with several other courts, both within and outside of the Ninth Circuit.[2]

Here, the Court concludes that Plaintiffs have pled both facial and as-applied Parity Act violations. According to the Complaint, "the terms of the Plan and the medical necessity criteria utilized by [Defendants], as written or in operation . . . limit[s] coverage" for mental health treatment more stringently than analogous medical and surgical treatment. (Dkt. No. 2 at 16.) In taking these facts as true and drawing all reasonable inferences in Plaintiffs' favor, this alone is sufficient, given the facts within Plaintiffs' possession, to plead a Parity Act claim. Indeed, Plaintiffs characterize their Complaint as pleading "at least five different specific [Parity Act] violations" that generally concern Premera's use of InterQual medical necessity criteria and requirement of acute symptoms for sub-acute mental health residential treatment, which Premera does not require for medical and surgical treatment at analogous facilities. (Dkt. No. 38 at 8, 9 (citing Dkt. No. 2 at 13–14).) Requiring plaintiffs to plead more "would prevent any plaintiff

---

[2] *See, e.g.*, *Smith v. Golden R. Ins. Co.*, 526 F. Supp. 3d 374, 390 (S.D. Ind. 2021) (finding that the plaintiff "is not required to provide additional or more specific factual allegations concerning the analogous services or the specific process by which [the defendant] allegedly disparately applies the medical necessity standard" when "more specific information is not within [the plaintiff's] possession"); *Smith v. United Healthcare Ins. Co.*, 2019 WL 3238918, slip op. at 6 (N.D. Cal. 2019) ("the 'meager' [Parity Act] case law 'comports with the notion that it is enough to plausibly plead that there is a categorical exclusion for mental health benefits but not for medical benefits'") (quoting *Bushell v. UnitedHealth Grp. Inc.*, 2018 WL 1578167, slip op. at 6 (S.D.N.Y. 2018)); *Timothy D. v. Aetna Health & Life Ins. Co.*, 2019 WL 2493449, slip op. at 3 (D. Utah 2019) ("The nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions.").

from bringing a mental health parity claim based on disparate operation unless she had suffered the misfortune of having her admission to a skilled nursing facility for medical reasons approved and her admission to a residential treatment facility denied and thus would have had personal experience with both standards." *Melissa P. v. Aetna Life Ins. Co.*, 2018 WL 6788521, slip op. at 3 (D. Utah 2018).

*Patrick S. v. United Behavioral Health* is instructive. *See* 516 F. Supp. 3d 1303 (D. Utah 2021). Like Plaintiffs here, the *Patrick S.* plaintiffs "analogiz[ed] mental health residential treatment centers . . . to medical/surgical inpatient hospice and rehabilitation facilities," and alleged that the *Patrick S.* defendants "applied acute medical necessity criteria to the subacute inpatient mental health treatment but [did] not apply the acute standard to the subacute inpatient medical/surgical analogues." *Id.* at 1309. Many courts have "consistently held" that this level of detail is sufficient to state a claim. *Id.* While the court in *Patrick S.* did not explicitly determine whether the plaintiffs' allegations were facial or as applied, this Court finds that such allegations, and Plaintiffs' allegations, constitute both facial and as applied violations. The facial violation arises from the acute care guidelines found in communications from Defendants; the as applied violation arises from Defendants' allegedly incongruent application of medical necessity criteria to mental health treatment compared with analogous medical treatment. (*See* Dkt. No. 2 at 7, 12–16.)

        2.        <u>Parity Act Claims are not Superfluous</u>

Next, Defendants ask the Court to dismiss the Parity Act claims as duplicative of the ERISA claims. (Dkt. No. 34 at 20.) Specifically, they argue that "Plaintiffs would be made whole by their ERISA benefits claim if they prove I.B.'s stay at [ECA] should have been covered under the plan terms," and since "[t]he Parity Act claim creates no additional remedy . . . [it is] superfluous." (*Id.*) But this ignores distinctions in the relief sought by each set of claims and the well-established caselaw within our Circuit. Plaintiffs' ERISA cause of action seeks a monetary recovery of benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs' Parity Act cause of action, on

ORDER
C21-1611-JCC
PAGE - 6

the other hand, seeks equitable and injunctive relief under 29 U.S.C. § 1132(a)(3). (*See* Dkt. No. 2 at 10, 18.).

In the Ninth Circuit, plaintiffs may seek relief under both 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3), so long as the remedy sought is not duplicative. *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016). Permitting plaintiffs to state both as alternative theories of liability is consistent with the Federal Rule of Civil Procedure 8(a)(3) and with "ERISA's intended purpose of protecting participants' and beneficiaries' interests." *Id.* at 962; *see also* Fed. R. Civ. P. 8(a)(3) ("a pleading . . . may include relief in the alternative or different types of relief"). Therefore, Defendants' objection is premature at this stage of the proceedings. *See Dennis H. v. California Physicians' Serv.*, 2019 WL 1301757, slip op.at 3 (N.D. Cal. 2019) (explaining that, at the pleadings stage, "it is exceedingly premature . . . to engage in a battle over whether or not a specific equitable remedy is appropriate. These arguments . . . are much more appropriately asserted at a later stage, when the specter of injunctive relief looms larger.")

Accordingly, Defendants' motion to dismiss the Parity Act claims is DENIED.

C. **Motion to Seal**

While there is a strong presumption of public access to the Court's files, a document that a party seeks to attach to a dispositive motion may be filed under seal so long as the party shows "compelling reasons" to do so. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178–81 (9th Cir. 2006). Here, Defendants move to file Exhibit 5 of their motion to dismiss (Dkt. No. 35) under seal because it contains medical information protected by the Health Insurance Portability and Accountability Act of 1996. (*See* Dkt. No. 33 at 1.) This is sensitive and personal information relating to I.B. (*Id.* at 2.) And protecting the confidentiality of it is a sufficiently compelling reason to maintain the exhibit under seal, which outweighs the public's interest in its disclosure. *See Karpenski v. Am. Gen. Life Cos.*, LLC, 2013 WL 5588312, slip. op. at 1 (W.D. Wash. 2013). Accordingly, the Defendants' motion to seal is GRANTED.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 34) is DENIED and Defendants' motion to seal (Dkt. No. 33) is GRANTED.

DATED this 27th day of May 2022.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE